United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good afternoon. I'm Judge Gould and I'm presiding today. We only have one case to be argued, but before we start argument, I need to mention other cases submitted on the briefs. We have Cunauw v. Bondi. That's number 22. 273284. And we have Dorsey v. United States. That's number 242800. That's submitted. And we have United States v. Sims, number 24759091. And that's submitted on the briefs. And we have United States v. Hunt. And that's number 241605. Oh, 3605. Sorry, I have new glasses and I'm still getting used to them. That's submitted on briefs. So without further ado, we can get to our case to be argued, which is State of Washington et al. v. Donald J. Trump et al. This case is set for 25 minutes per side. So if an appellant wants to make a rebuttal argument, please try to cease your opening argument a little bit before all your time's gone. So appellant, can you please proceed? Thank you, Judge Gould, and may it please the Court. Eric MacArthur for the government and I would like to reserve three minutes for rebuttal. In 1868, in the wake of the Constitution, all agree that the principal purpose of its citizenship clause was to repudiate Dred Scott and to guarantee citizenship for the freed slaves and their children. The question presented here is whether it also extended birthright citizenship as a matter of constitutional right to the children of transient visitors and illegal aliens, a class that did not even exist at the time. Text, history, and precedent confirm that it did not. On the contrary, the framers of the 14th Amendment expressly rejected a proposal to make birth in the United States the sole criterion of birthright citizenship. Instead, they adopted the jurisdictional clause to limit birthright citizenship to those owing primary allegiance to the United States. Where did that come from? Where did the jurisdictional clause come from? You said they adopted it. Where did it come from? It was the language that had been proposed by Congress to replace the language that existed before in the law, which was the Civil Rights Act of 1866. It uses a little different language, doesn't it? It does use slightly different language, but the framers of the 14th Amendment were quite clear that they intended the language in the 14th Amendment, subject to the jurisdiction thereof, to achieve the same object as the language in the Civil Rights Act, which was... The Civil Rights Act says, not subject to any foreign power, excluding Indians not taxed. Yet the amendment says, subject simply, subject to the jurisdiction thereof. That is correct, and... What do we know about the reason for choosing the simpler language? I think it had to do with the omission of the Indians not taxed exclusion from the Civil Rights Act. The framers of the 14th Amendment became concerned that that language might be misconstrued. They had intended it to be a constitutional term of art, to refer to Indians who were not part of the apportionment base because they hadn't integrated into American society. They were concerned that that language be read literally to adopt a property test. They excluded that language, and then if you had taken just the language of the Civil Rights Act without that language excluded, I think there would have been an ambiguity as to whether they were making the children of Native Americans birthright citizens, which all agreed they did not intend to do, because that language was... We know this because of statements by members of Congress. How do we know this? There's a whole debate that unfolds on the language of the 14th Amendment. As it was proposed, it did not have that language from the Civil Rights Act excluding the Indians, and there was an amendment proposed to add it back in to the language of the 14th Amendment because some of the members were concerned that the language subject to the jurisdiction thereof could pick up the children of the Native Americans because the Native Americans were subject to U.S. law. Congress has plenary authority to regulate the Native Americans, and so they voiced that concern, and the proponents of the 14th Amendment, chief among them Lyman Trumbull, whose name you might hear me say more than once today, he was probably the most significant player in all of this. This is the abolitionist senator from the state of Illinois who was the chair of the Senate Judiciary Committee in the Civil War and Reconstruction, had a significant hand in the Civil Rights Act, 13th Amendment, 14th Amendment. They explained to these people who wanted to, the members who wanted to put in the express exclusion for Indians back into the 14th Amendment that that would be confusing and unnecessary because the language subject to the jurisdiction thereof already excluded the Native Americans because they owed allegiance to their tribes. That is what Senator Lyman Trumbull said expressly when asked about the meaning of subject to the jurisdiction thereof. He said... Did Senator Trumbull talk about children of foreign ambassadors? He may have. He may have at one point. I think that was during the debate on the Civil Rights Act. He spoke about the children of foreign ambassadors, but he made a number of actually very illuminating comments about what they were trying to achieve. It was pretty well assumed at the time of the adoption of both, wasn't it, that birthright citizenship or citizenship did not extend to the children of ambassadors, correct? That is correct. Why didn't they put that in? Because that same language subject to the jurisdiction thereof already excluded them in the same way it excluded Native Americans because they owed allegiance to a separate sovereign. So... You started off by saying that the class, the illegal aliens didn't exist as a class at the time of the ratification of the 14th Amendment. So how was illegal immigration conceived of at that time? I would say that it wasn't conceived of at that time because the first restrictive federal immigration laws weren't enacted until the mid-1870s after the 14th Amendment had already been ratified in 1868. So any foreigner that entered the U.S. territory would have been considered a legal migrant? They would have been lawfully present. That's correct. Lawfully present, okay. And our fundamental submission, because there was a category of temporarily present aliens at the time of the 14th Amendment, and our fundamental submission is that for their children to be birthright citizens under the 14th Amendment, to come within that subject to the jurisdiction clause, their parents had to be domiciled in the United States. Mr. Counsel, if I could ask you a question on that. I'm looking at the language of the citizenship clause. I don't see any language in there textually that says they have to be domiciled. That's correct. There isn't a reference to domicile. The logic of the argument is step number one is that subject to the jurisdiction thereof, I mean, subject to the complete political jurisdiction of the United States, not simply the regulatory jurisdiction where you have a duty to obey U.S. law as the district court held, then step number two of the argument is that in order for foreigners who are coming from abroad to become subject to the complete political jurisdiction of the United States, they have to be domiciled here. So could, and today, an illegal immigrant facing criminal charges contest the jurisdiction of our government? Not jurisdiction to impose criminal liability because everyone who's present in the United States has a duty to obey U.S. law. Can you slice a difference between what regulatory jurisdiction and criminal jurisdiction? Explain that to us. No, the distinction isn't between regulatory and criminal. It's between regulatory and what the Supreme Court has called political jurisdiction. And I think regulatory jurisdiction is properly thought of as included within a subset of political jurisdiction, but political jurisdiction goes beyond that. It's the most encompassing form of jurisdiction that a nation can have over an individual where you not only have the duty to obey U.S. law while you are present in the country, but it's the sort of jurisdiction that can get you convicted of treason if you leave the country and go abroad and take up arms against the United States in a foreign theater of war. It's the sort of jurisdiction that if you are in trouble in a foreign nation, the United States will intervene diplomatically on your behalf to protect you. And this is not a concept that we have made up. This has been in the Supreme Court's case law from the very beginning. So in Elk v. Wilkins in 1884, the very first decision construing the scope of the citizenship clause, the court said the quote unquote evident meaning of the jurisdictional clause is not merely subject in some respect or degree to the jurisdiction of the United States, but completely subject to their political jurisdiction and owing them direct and immediate allegiance. So part of your understanding of the government's understanding, if you will, of this concept of political jurisdiction is protection from foreign powers, correct? That is part of it. Correct. It's a mutual relationship of allegiance on the part of the individual and protection on the part of the government. And that was that was also in Wong Kim Ark, by the way, 15 years after Elk v. Wilkins, the court said that the 14th Amendment affirms the ancient and fundamental rule of citizenship by birth within the territory, doesn't stop there, in the allegiance and under the protection of the country. Every justice in both the majority and the dissent in both Elk and Wong Kim Ark agreed that to be subject to the jurisdiction of the U.S. within the meaning of the jurisdictional clause, there has to be this reciprocal relationship of allegiance and protection. Then let me ask you this, an individual who applies for asylum and is granted asylum by the government, is that person entitled to protection from the government they're fleeing? I suppose in a sense they are entitled to protection from the government they're fleeing, but the executive order hasn't been implemented yet. One of the problems with the injunction is that it enjoined the government from even explaining how this order would be implemented. And so how the executive order, if and when it's allowed to take effect, would apply to various categories like asylees, like refugees, is not clear at this point. Counselor, so do you get to the more unique interpretation of jurisdiction based off of the exceptions that the well-crafted exceptions? How do we know that it's that unique political jurisdiction versus the more common municipal jurisdiction concept? Well, we know for one, because the framers of the 14th Amendment told us so. Again, Lyman Trumbull said, what do we mean by subject to the jurisdiction of the United States, not owing allegiance to anybody else? That is what it means. These were not private debates like happened at the original Constitutional Convention. These were congressional debates that were widely publicized in the nation's leading newspapers. And this is taken from those very debates where... Weren't there also debates about the Chinese and gypsies? I think that's from the 1866 Civil Rights Act. So how do we deal with that? It was also, there was also a debate around that for the 14th Amendment. I actually think that those excerpts from the debates support our position. So this was Senator Cowan who was concerned about making birthright citizens of the children of Chinese immigrants and the people that he called gypsies. And he wanted to draw a racial distinction between them and immigrants from Europe. And in trying to persuade his colleagues who were skeptical of that position, he appealed to a common premise. He said, have they any more rights here than temporary sojourners? The proponents of the 14th Amendment rightly rejected his racial distinction. They did not reject. In fact, they shared that common premise that the children of temporary sojourners, people who came from abroad and were not domiciled here, but were only visiting the United States temporarily, their children were not birthright citizens. Multiple members of Congress during the debates on both the Civil Rights Act and the 14th Amendment expressed that view. And I'm not aware of anyone in the debates who contradicted it. And that was also consistent, by the way, with Justice Story's very influential commentaries on the conflict of laws dating back to 1834, in which he had said the same thing, that the English rule as it applied in America was subject to this qualification that the children of temporary visitors from abroad were not citizens because they still owed allegiance to the countries from which they came. Counsel, if I could interject a question. I think you urged that you felt Wong Kim Ark was consistent with the government's interpretation. Can you give me a page side to the part of that opinion that you think supports you? I can. The key pages of the opinion in Wong Kim Ark are pages 693 to 694. And I think you need to think of this opinion in two parts. I'm sure you've read it. It's a very long opinion. Everything before page 693, I put in the category of historical exposition. There's a long tracing of the law of citizenship, beginning with the common law of England, progressing through American antebellum law, the Civil Rights Act, the 14th Amendment, the Court's prior decision in Elk, long survey. Then there's a key pivot point in this opinion right at the top of page 693. The Court says the foregoing considerations and authorities irresistibly lead us to these conclusions. And everything on that page and the next page is couched in terms of aliens who are domiciled here. So here's the key, what I take to be the holding of the case. The Court says the amendment in clear words and manifest intent includes the children born within the territory of the United States of all other persons, other here is except for the ones that had previously been recognized as exempt, of whatever race or color domiciled within the United States. The next sentence provides the explanation for that, tying it to the language of the 14th Amendment. It says every citizen or subject of another country while domiciled here is within the allegiance and the protection and consequently subject to the jurisdiction of the United States. Then you turn over to the next page, page 694, and again, tying it to the language of the 14th Amendment, the Court says that Chinese persons are entitled to the protection of and owe allegiance to the United States so long as they are permitted by the United States to reside here. So I think it's crystal clear that whatever observations the Court had made about the historical development of citizenship law, when it came time for them to tell us what they thought of all of that and what it meant for American law after the 14th Amendment, they couched everything in terms of aliens who are domiciled here. At a minimum, that means they're holding sweeps no farther than that, which makes sense because the parents in that case were domiciled in the United States. The Court did not have before it any question about aliens who were temporarily present or unlawfully present. The Court would, however, have been... Is your argument then essentially that at the adoption of the 14th Amendment, we've rejected at least some parts of the English common law? Yes. Both the majority and the dissent in Wong Kim Ark recognized that the rule of... The common law rule in England was that children of non-domiciled parents, someone who was in England just temporarily, if they had a child during their temporary sojourn in England, that child was a British subject from birth and had a lifelong, unbreakable allegiance to the crown. And it's very clear, for example, that American law has repudiated the inalienable allegiance part of that. That was repudiated by the Declaration of Independence and ultimately by the patriots at Yorktown when we absolved our allegiance from the British crown. It was also... I didn't mean to interrupt. Go ahead and finish. I was just going to finish the thought. It was also formally repudiated in law at the very same time that the 14th Amendment was being ratified. Congress enacted the Expatriation Act of 1868, declaring that British doctrine of allegiance to be inconsistent with American ideals. Sorry, Judge Hawkins. I apologize for interrupting you. If domicile, as you argue, is required for full and complete jurisdiction, why was the concept of domicile not discussed during the ratification debates? I think it was discussed. It was discussed under the rubric of are the children of temporary sojourners going to be given birthright citizenship by the Civil Rights Act and the 14th Amendment. And Lyman Trumbull, again, the key player here, wrote a letter to President Andrew Johnson explaining what they were doing in the Civil Rights Act. And in that letter, he said, we are making birthright citizens of the children born to all persons domiciled within the United States with the exception of the Indians. Great. Can I ask, what should we do given the procedural posture with the Supreme Court? So the merits of this case aren't before the Supreme Court. The only issue before the Supreme Court concerns the scope of the injunction. And so I suppose if I were in your shoes, I probably wouldn't put pen to paper on that part of the analysis for a few weeks, because I do think we will have some significant additional guidance from the Supreme Court about how to think about the nationwide piece of this. But the merits weren't briefed before the Supreme Court. I don't expect the Supreme Court to weigh in on that. Do you expect them to weigh in on the state standing issue? They may, because that is part of the scope of the injunction. My recollection is that our papers in the Supreme Court did not. We preserved the Article III point, but did not brief that there. We did brief the point about how they don't have standing to assert the individual citizenship rights of their residents. Well, so if the Supreme Court comes back and gives us a new formulation of how we should consider universal injunctions, wouldn't the proper, our proper response be to vacate the injunction and send it back to the district court? I suppose that will depend on the guidance, the sort of guidance that you get from the Supreme Court. If, for example, the Supreme Court says either as a matter of Article III or as a matter of equity, a court can't enter an injunction that sweeps beyond what's necessary to provide complete relief to the parties before the court. I suppose the court could itself apply that to tell us how that applies to this situation. If not, it may remand with directions either for the Court of Appeals or for the district court in the first instance to figure that out. I think you want to reserve some time. I have one last question for you. Yes, Judge Hawkins. And forgive me if this appears to be a bit unfair, but I'd be interested in your perspective on this. You clerked at the U.S. Supreme Court, correct? I did a number of years ago. OK. And when you were clerking, was Justice Scalia still on the court? He was. What do you think he would say about looking beyond the mere words of the amendment? I think Justice Scalia would be very open to looking at all of the historical evidence that tells us how those words were understood at the time. And as I said before, these were not private debates. They were very public debates about what is the meaning of subject to the jurisdiction. And I do think that debate over the Indian exclusion is actually quite extraordinary because everyone agreed we're not trying to make citizens out of the Native Americans. And the question was, has the language, does the language that we have chosen, is it adequate to exclude them? And so you had a whole debate about what does subject to the jurisdiction thereof mean? And the answer from the proponents of the 14th Amendment was that would not make citizens of the Native Americans because they owe allegiance to their tribes. Justice Scalia viewed the Constitution in terms of interpretation as a statute. And he was widely critical of looking at congressional history and statements of senators opposing or supporting a particular thing. And famously said, just the words. I don't dispute that Justice Scalia was very skeptical of reliance on legislative history. I think he took a different approach when you were looking at trying to understand what, how were these words understood at the time? And there's really little better source for that than looking at the explanation given by the people who were explaining to each other and to the American public what these words mean in this context. Counsel, do we look at the ordinary meaning of the words? I do think you look at the ordinary meaning of the words and our understanding of political jurisdiction is well within the ordinary meaning of the word jurisdiction. The key point here that you need to understand is that jurisdiction, just like allegiance, comes in degrees. There can be a lesser form of jurisdiction, for example, that the United States has over people who are temporarily present here, where they just have the duty to obey U.S. law while they are here. What the framers explained and what the Supreme Court explained is in the 14th Amendment, we are not looking at that lesser form of jurisdiction. We're looking at the higher, more incumbency form of jurisdiction that is the same type of jurisdiction in quality and extent that applies to U.S. citizens. Counsel, I have a further question. Are there any dictionaries from the period when the amendment, 14th Amendment, was adopted that defined jurisdiction in terms of allegiance? I'm not aware of a dictionary definition that spoke to allegiance and protection, but I do think that at this point, the Supreme Court has already told us that that's what jurisdiction means in the context of the Citizenship Clause. Thank you, Counsel. Do you want to reserve time for Rappel? Yes. Thank you for your argument. Counsel, we've taken up some of Rappel's time with questions, so if you need a further minute or two, we'll give it to you. Go ahead. We'll hear from Rappel. Thank you. May it please the Court. I'm Washington Solicitor General Noah Guzzo-Purcell on behalf of the states of Washington, Oregon, Arizona, and Illinois. Our Supreme Court has described American citizenship as a most precious right. And for generations, that precious right has been granted to virtually every baby born in this country as required by the text and original understanding of the 14th Amendment and longstanding Supreme Court precedent. But in the executive order that the states challenge here, President Trump seeks to turn citizenship into a political football, denying that precious right to hundreds of thousands of babies born in this country simply because their parents are here to work, to study, or to escape persecution or violence. The executive order is unconstitutional and un-American, and this Court should uphold the District Court's preliminary injunction in full. I'd like to start today by talking about the merits and then the scope of the injunction. But first, I want to emphasize just how extraordinarily radical the Trump administration's position is in this case. Since the U.S. Supreme Court decided Wong Kim Ark over 125 years ago, it has been the settled understanding of Congress, the executive branch, and the courts that citizenship is granted to babies born in this country regardless of their parents' immigration status. The Trump administration's position is that for that entire time, everyone was wrong. And if you accept that view, it would also mean that millions of babies born during that time who got the benefit of birthright citizenship never actually should have been treated as   They never should have been allowed to serve on juries, to vote, to hold various government jobs, or receive government benefits. They could have been deported. And that would include millions of Americans alive today who have always thought that they were citizens. There is no basis to accept that extraordinarily radical position, and we would ask this Court to emphatically reject it. Your friend on the other side relies in part on the concept of domicile. You heard his argument. Does Wong Kim Ark refer to domicile or use the word? It certainly does in describing the facts of that case, Your Honor, but the holding of the case did not turn in any way on domicile. The Court surveyed the whole history of the English common law, of the practice in the early colonies, and explained what the 14th Amendment was meant to mean. And what the Court explained was that it was meant to exclude only those very limited categories described in the opinion. It uses the word, the opinion. Yes. Uses the word domicile, by my count, 22 times. Fair enough, Your Honor. I would say the other side's argument in this case is kind of akin to if you think about after the U.S. Supreme Court decided Heller, if the federal government had said, okay, Heller has been issued, but now we are going to ban all rifles because Heller only dealt with handguns. It's factually accurate that Heller only dealt with handguns, but that argument would completely ignore the reasoning of the opinion. And the same is true here. Wong Kim Ark was not based on domicile. It looked at the history of these terms and their original understanding, the meaning, and said, here's what the text means. And they said, and I would quote you from page 682 of the opinion, the real object of the 14th Amendment, and using the phrase subject to the jurisdiction thereof, was to exclude by the fewest and fittest words possible the children of Indian tribes and the two classes of cases, the children of invading armies and the children of diplomats, to exclude only those cases that have been recognized exceptions to the fundamental rule of citizenship. And so that was the holding. And that's also, it's very clear, Your Honor, how the U.S. Supreme Court has understood its own holding in Wong Kim Ark. If you look at subsequent cases, there are at least a dozen cited on page 34 of our brief that treat it as a settled question that children born in this country become citizens regardless of their parents' immigration status. And I direct you to two in particular. The Errico case, in that case, people came into this country illegally, had children while they were here, and then argued that they could not be deported because they had U.S. citizen children. They argued that under the statutes at the time. And the U.S. Supreme Court agreed with them. So obviously, the citizenship of their children was hugely important, and the court treated it as settled that they must be citizens. I'd also direct the court to Plyler v. Doe. In that case, while the court splintered on many things, it was unanimous in rejecting an argument almost identical to what the federal government is arguing here. In that case, Texas argued that undocumented immigrants were not subject to the jurisdiction of the United States and therefore not protected by the 14th Amendment. And all nine justices rejected that argument while splintering on many other topics. So the parents involved in Wong Kim Ark owe allegiance to their home country? Absolutely, Your Honor. They were citizens of China. And the court made that clear. The other problem, among the many problems with the administration's argument here, is that Wong Kim Ark would have had to come out the other way under their theory. Because their theory is that someone can only become a citizen if their parents' primary allegiance is to the United States. Well, I thought their theory is that it's if they're domiciled in the United States. Well, I would say they go back and forth a little bit about that, Your Honor. Oh, they say allegiance means domicile in some... Well, and among the problems with that, so there's multiple problems with that. Number one, Wong Kim Ark's parents were citizens of China. The court emphasized that in the opinion. And they could never become citizens of the United States. But Wong Kim Ark said that they are resident, permanent domicile in the United States, correct? That's true, Your Honor. But so are countless people, I would emphasize, who are excluded from citizenship under the executive order. So, I mean, the administration's argument is absolutely internally inconsistent. I mean, the only requirements of domicile... Well, I guess you would... Would you agree that Wong Kim Ark is limited to its... Its holding is limited to children of aliens that are permanently domiciled in the United States? No, Your Honor, I would not agree with that. Because that is not how the court reached its conclusion. And that is not how the Supreme Court has understood it ever since then. In many, many cases, the court has cited Wong Kim Ark for the principle that any child born in this country, except for those very limited categories, becomes a citizen. And that has been a central part of the holdings of subsequent cases. So I think it's too late in the day to argue now. I mean, if the administration wanted to come in and argue that Wong Kim Ark was wrongly decided, that would be one thing. But that's not their argument, as I understand. They're arguing that it should be understood to mean that it only covers parents who are domiciled here. And that is not part of the holding of the opinion. And that is not how the U.S. Supreme Court has understood it. And again, under their own allegiance theory, Wong Kim Ark's parents could never become citizens here. And so it just, it does not track on the reasoning of the opinion or on the executive order. Because it does refer to resident aliens, birth of children to resident aliens, right? Well, it does, it talks, Your Honor, again, it talks in many places about the fact pattern in that case. But that was in the holdings section. Wouldn't you agree that that was part of the holding? Well, Your Honor, it's a very long opinion, as my friend on the other side said. I would say that the Court said very clearly, multiple times, that the overarching goal of the 14th Amendment was to incorporate the exceptions that had been part of the common law understanding and the prior practice in the United States. And that's why, Your Honor, I want to emphasize that the distinction that the other side is attempting to draw about Indian tribes is just a total red herring. Because Wong Kim Ark actually addressed in detail Elkie Wilkins. It was the same Justice who wrote both opinions. And Justice Gray explained in Wong Kim Ark that the holding of Elkie said nothing about the status of immigrant parents. Because at the time of the 14th Amendment, Congress did not understand Indian tribes to be generally subject to the jurisdiction of the United States. Could you describe that exception? That's the one that I have a hard time wrapping my head around. So a native Indian who was born in the United States, lived off a reservation, lived in a reservation, for example, but moved to Seattle and had a child, that child would not be a citizen, correct? Well, today, statutorily, they would be. But under the Constitution would not be. That's what the court held in Elkie Wilkins. And then, but someone that comes from France, comes to Seattle the day before, then has a child, that child would be a citizen. Yes, Your Honor, and the court explained that in Wong Kim Ark. That's hard to wrap my head around. The Indians whose family lived entirely in the United States their entire life, they have less rights than a visitor from another country who's been here for a day. Well, two points, Your Honor. First of all, again, Wong Kim Ark expressed the address to that point in detail and explained that the reason for that is because at the time of the framing of the 14th Amendment, Indian tribes were meaningfully different from foreign visitors. So Indian tribes were not subject to general laws passed by Congress. They were not subject to general state laws. It's because they were quasi sovereigns, correct? So why shouldn't we consider Indian tribes as foreign nations? Well, I think Wong Kim Ark resolves that, Your Honor. Wong Kim Ark looked at Elk V. Wilkins and said, Elk V. Wilkins dealt with the unique status of Indian tribes, which are separate sovereigns within the United States. And it said, look, there's all these differences between Indian tribes and foreigners. Foreigners, when they come to this country, are subject to general laws. They're subject to state laws. They're subject to state taxes. Under the common law understanding, they were citizens. None of that is true about Indian tribes. So Indian tribes are not subject to any municipal laws? Well, it varied from place to place and the practice was very different, but they were not subject to general laws passed by Congress. And the court emphasized that in Wong Kim Ark. The law had to specifically reference the tribe. Most tribes were dealt with by treaties or specific laws that called them out. And in Wong Kim Ark, they go through this in some detail of how after adoption of the 14th Amendment, citizenship was granted to specific tribes and tribal members by treaty. And so it was clear in Elk V. Wilkins that that played a huge role. So they could be subject to complete jurisdiction. It's just whether or not Congress decided to exercise it or not. When Congress enacted the 14th Amendment, they did not intend to make Indian tribal members citizens of the United States. And it's clear that they did intend for the law to be what had been under the common law that parents born. How were they not subject to complete jurisdiction? Indian tribes. How are they not subject to complete jurisdiction of the United States? In all the ways I just said, Your Honor, they had not been treated as citizens under the common law or under the original Constitution. They were not subject to general laws passed by Congress. They were not subject to general state laws. But Congress had the authority to pass those laws, correct? Congress could have done that and did that off of my treaty. But that's a different question, Your Honor, than whether they actually were understood by the framers of the 14th Amendment to be subject to the jurisdiction of the United States. They were viewed at the time. The tribes were viewed at the time. However, we may look back on this view as being conquered nations, correct? I want to be clear, Your Honor, I'm not in any way endorsing how the framers thought about Indian tribes. No, no, no, no. We're all looking back more than 100 years ago to what went on. But the sort of looming question is, why are Native Americans sort of outside the penumbra of our looking at this question? Well, and again, in the lengthy, lengthy opinion of Wong Kim Ark, it talks about the varied status of Indian tribes. And I would direct also the court to recent opinions by Justice Gorsuch in describing the status of Indian tribes at the time of the adoption of the 14th Amendment. It was a widely varied practice. Some were in open hostilities with the United States. Some had treaties with the United States. But again, I would say this court doesn't need to grapple with all that because the court already did in Wong Kim Ark. The court looked at L.P. Wilkins, the exact same justice, and said, look, that's a unique situation. Indian tribes are separate sovereigns within the territory of the United States. What about gypsies? Well, I think that point just emphasized, Your Honor, that the framers understood that the citizenship clause would extend citizenship to people, to immigrants, to the United States. And that that was the understanding based on the common law and the prior practice. Your Honor, I want to make sure to address any other questions the court has specific to the states because in a couple of minutes, I'm going to turn things over to my colleague for the private party. So I just want to make sure that I don't, if the court has any questions specific to, you know, state standing or anything along those lines. I have a question that might be pertinent to all the plaintiffs. And that is, if the government's position is accepted, would that mean that if a mother of a child did not meet the government's current definition, that the child, even if they lived in the United States, you know, for 40 years thereafter, paying taxes, working, making a life here, that they could be deported now? That's exactly right, Your Honor. I think it highlights, not only is their argument a historical, it leads to this absurd situation where citizenship, birthright citizenship, would turn on the subjective. Doesn't the executive order have a 30-day kick in? Yes. And that's suspended as we speak here today. That's correct. But if you accept the interpretation in the executive order, it would mean that that's what the Constitution always meant. So it would also have retroactive consequences. And I think it's important to understand how subjective the federal government's test is. You would have to question the parents of every newborn in this country. You know, do you intend to stay here? What is your allegiance? For example, I don't understand how their theory squares with dual citizens, their children here becoming citizens when they also have allegiance to another country and might have  Doesn't that just show the injunction is premature? We don't know how the government's going to implement any of this, because it was a facial challenge from day one. No, it does not, Your Honor, because Wong Kim Ark very clearly forecloses the federal government's interpretation that is the entire basis of the executive order. Well, you're just saying how unworkable it is, but we don't know how unworkable it is because they were not given a chance to implement it. I respectfully disagree, Your Honor. The entire basis of the order is to exclude from citizenship huge categories of people who are guaranteed citizenship under the Constitution. Can you address the whole complete relief issue? Why is a nationwide injunction or universal injunction necessary to complete relief to the states? Absolutely, Your Honor. So there's three problems with the government's argument on this issue. The first is that they never presented this argument for a narrower form of relief, anything remotely specific to the district court. So the district court never had a chance to address it. The district court never considered it either, right? Well, there was no alternative put forward by the federal government about how to, and that's including between when the time the TRO was issued and the preliminary injunction was issued when there was time for the federal government to formulate. Should we send it back to the district court for the district court to consider this then? No, Your Honor, because it's not, this court's precedent is clear. It's not error for the district court to not consider an argument that was never before. Second, I would say the harms to the states that will flow from a piecemeal rule are the same harms that will flow from the rule itself. Babies will be born in non-plaintiff states. They will not receive a social security number. Their families will move into our states. And when they arrive here, we will not have any way under our existing systems to enroll them in programs that they are entitled to participate in. And we will have to develop entirely new systems. Are those programs, they're entitled by, because they are U.S. citizens or because? Yes. I mean, they're entitled. You're saying then when a non-citizen comes into your state, you will treat that person as a United States citizen? Well, the Constitution treats them as a U.S. citizen. The court would be holding that we're right about the law. It just would be limiting its relief. And so that child who should be treated as a U.S. citizen, who is a U.S. citizen, would not be able to participate in programs that they should be entitled to participate in unless we rework our whole system. You would agree an injunction that requires the federal government to treat that person who's come out of his state into your state as a U.S. citizen would give you complete relief? No, because there's no way for them to do that without us having to rework our systems to check whether, you know, to... And we don't know because the government was never given a chance to implement any of this. Well, the government has not explained in any meaningful way how it would work for a child who's born, say, in Coeur d'Alene, moves into Spokane, would have no social security number when they arrive. We would have no way to check whether they were properly... But they were enjoined from even implementing procedures on how to figure this out, correct? They're not enjoined, Your Honor. I think they wildly exaggerate the scope of the injunction. They're not enjoined from thinking internally and discussing internally how they would implement this. They're enjoined from external steps to implement the order. And that's entirely reasonable given that... So if they were able to figure out a way that any non-citizen that comes into your state that should be deemed a United States citizen will be treated as a United States citizen by the federal government with no cost to the states, then you would agree you would get complete relief? If they could figure out a way to do that with no cost to the states, I think they would have a plausible claim that the injunction should be limited. They have not presented anything remotely like that. If they want to move to modify the injunction in the district court, they can always do that. Your Honor, I want to make sure we have time for my co-counsel. We would ask, the states would ask that you affirm the district court's injunction in  Real quick, what is your client's position on whether we should wait for the Supreme Court? It's similar to what the federal government answered, Your Honor. All I'm asking for is you should wait or you shouldn't? We think it's very reasonable to wait for the scope of the injunction issue. We agree that the court should start as soon as possible on the merits because the Supreme Court made very clear that it would like to reach the merits of this issue as soon as possible. And so we would urge the court to begin writing that portion of the opinion. Thank you. All right. Thank you, Your Honors. Good morning. May it please the court. Matt Adams with Northwest Immigrant Rights Project on behalf of individual plaintiffs in the proposed class. Now, plaintiff appellee Shirley Norales gave birth to her child in a nearby hospital in Burien, Washington, just a week after the purported effective date of the executive order. The district court had ample authority to ensure that this child was not stripped of her citizenship and accordingly deprived of pathways to health care, education, and unlawfully subjected to immigration enforcement. The 14th Amendment. So the case is moot as to that plaintiff? Absolutely not. That plaintiff is dependent upon the ultimate holding of the court. Isn't that child now a United States citizen? If the court reaches a final judgment on this, all we have is a preliminary injunction saying that we're likely to prevail on the merits. Well, the executive order is prospectively applied, right? It doesn't have any retroactive relief. So that child is now a United States citizen and it can't be taken away that I'm aware of. The executive order purports to suspend portions of its enforcement with respect to certain agencies till 30 days after its order. That's really a pretty straightforward question, counsel. As you read the executive order, is it or is it not retroactive? It is not retroactive in some aspects of it. But I'd make two points on this. One, defendants are not challenging the standing of our plaintiff. Two, this is also a plaintiff as a standing is. We have to suspend to consider. So yes, but this this plaintiff is also a representative for a proposed class in this court's case law. Amply supports her continued. Well, then under Rule 23, she's no longer, you know, a representative plaintiff. I under pitch. She continues to this court's case. So it makes clear that she continues to qualify as it goes back to the time of filing the complaint that she is entitled to represent the class doesn't apply to class actions. Mootness as to the individual, but not to the class claim. Right? More importantly, this case begins and ends with the court's decision. Wonky Mark. Wonky Mark definitively held that subject to the jurisdiction applies to all persons born in this country, even those who are born to parents who are foreigners who are temporarily here and that they are subject to its laws, subject to its jurisdiction and accordingly entitled to citizenship. Now, the same question I've asked before, then why does the opinion wonky Mark mentioned domicile 22 times? I would turn to the language of the opinion itself. Counsel earlier pointed to 693 of the pages, the seminal discussion on domicile, but then omitted the very next sentence, which clarifies that it, in fact, is addressing even those who are here temporarily. And if I just may finish reading the quote that he started, every citizen or subject of another country while domiciled here is within the allegiance and the protection and consequently subject to the jurisdiction of the United States. But then it continues. His allegiance to the United States is direct and immediate. And although about local and temporary, continuing only so long as he remains within our territory is yet, in the words of Lord Coke, Calvin's case, strong enough to make a natural subject for if he at the issue, that issue is a natural born subject. And it goes on to say as much a citizen as the natural born child of a citizen. And the other point where defendants counsel was asked, so is it your contention that English common law is not applicable? He asserted, yes, English common law is not applicable. Notably, that is the same position of the dissent in Wong Kim Ark. These were the same arguments that were presented and were already rejected. Well, I don't think they're saying a wholesale rejection of English common law. There are facets that were clearly rejected. Correct. Wouldn't you agree? I would. But the permanence of allegiance regarding. So the question is not whether or not it was wholesale rejected. The question is, was it modified by the adoption of the 14th Amendment in some respect? The question, as I see it, is whether the dissent's approach, which said that the English common laws doctrine accepting Jusolee is, in fact, the law of the land and the dissent said, no, that shouldn't be accepted. But the majority rejected that. And said, yes, Jusolee is enshrined as the governing principle in the Constitution. You know, a little further along in Wong Kim Ark, it then says something to the effect, you know, that, you know, that they are entitled to the protection of allegiance to the United States so long as they are permitted by the United States to reside here. That's correct. It's recognizing, in fact, the fragile status of those individuals who are here. At the time of Wong Kim Ark, there had been a series of exclusion and deportation provisions. So doesn't that suggest that the permission of the federal government is necessary for this birthright citizenship? No, I think it only states until the point that they are permitted to be here. Once they are removed, obviously, they are no longer within the country's jurisdiction. But for those individuals who are here, regardless of their status, they are subject to its laws. They are obligated to follow the law and they are entitled to its protection. And that was the definitive holding of Wong Kim Ark. So long as they're permitted. So we should just excise that part out. No, so long as they're permitted. By the United States to reside here. Yeah, the day they are removed from this country, they are no longer permitted. There was, at that time, there was... Well, doesn't that suggest permission is also needed on the front end? I would say no. I would say that once someone's in this country, they're subject to its jurisdiction. They're obligated to comply with its laws and they're subject to the punishment when they don't comply. And that's both civil and criminal. Every individual, whether they're here temporarily or permanently, is subject to its jurisdiction. The court listed the exclusive exceptions, none of which apply. And of course... But I guess the problem is that everyone agrees that the concept of illegal immigration was not conceived of at the time, correct? I don't agree with that. You mentioned your brief, the importation of slaves, right? And you can also go back to the Naturalization Act of 1790, which precluded citizenship by naturalization for any person who was not, quote, a free white person. And so as of 1790, you already had this underclass of immigrants who are forever barred from becoming U.S. citizens. And that was at the very forefront of the debate when they were looking at this amendment. Sorry, just to the illegally imported slave point, is there any case that says that they are definitely children, their children are, you know, have birthright citizenship? I don't know off the top of my head. I don't know the answer. But going back to the point that at the time that this was debated, it was very much at the forefront in the senator's mind about whether these children of foreigners that some senators esteemed or rather believed were not worthy to citizenship would receive the benefit because of the language. Senator Cowen, the most vocal or one of the most vocal opponents to it, opposed the amendment precisely because he understood it to encompass the children of foreigners, including the immigrants or the Roma, which he referred to as gypsies. Not only that, at the time of Wong Kim Ark, again, you had a series of immigration acts that had been passed, starting with the Asian Exclusion Act, the Chinese Exclusion Act, the McCreary Act, all of these, again, excluding subject to deportation, certain categories of people. There's no basis then for the government to say that Wong Kim Ark simply didn't anticipate this idea of foreigners that had no lawful right to be in this country, because the law is at a time when Wong Kim Ark pronounced its decision, made clear that every child born here, regardless of the length of their parents' stay, was entitled to citizenship. Counsel, that red light there means your time has expired, though it's permissible and desirable to answer fully any question the court has. So I don't want to cut you off in mid-sentence, but could you bring your argument to a closed place? We believe the text of the statute, the subsequent case law, as well as the history of the 14th Amendment, make abundantly clear there is no room for the president now to attempt to find citizenship, and that this court should affirm the preliminary injunction that was issued by the district court. Thank you, counsel. And appellant, you had two minutes left, but again, we used a lot of your time. And if you need an extra minute or two, I'll add that to your clock. However, let me ask you first off, could you address the question that I asked the state's counsel, and that is if there's a mother of a child who doesn't meet the government's definition, but their child has lived here for decades, built a life here, bought a home, maybe this and that, had a job, paid taxes, is it the government's position that the government could exercise discretion to remove them from the U.S.? Under the terms of the executive order, no, because the executive order applies only to children who are born 30 days after the issuance of the executive order. It is prospective only. I did want to quickly respond to Mr. Purcell's argument on the scope of the injunction before I turn back to the merits. He made the argument that an injunction limited to the plaintiff states would be inadequate to completely redress their injuries. I think that is wrong. Of course, we don't think they're proper plaintiffs here to begin with. But even setting that aside, an injunction that applied to individuals who are either born or reside in the plaintiff states would fully cure their injuries. Mr. Purcell said, well, what about a child born in another state who doesn't receive a social security number and then moves, for example, to the state of Washington? So what should Judge Kunar have done? Limited his injunction to the Western District of Washington? To the Ninth Circuit? Assuming, on our view, the injunction should have been limited just to the individual plaintiffs because the states aren't proper parties. But if you assume that they are proper parties, the inquiry should have been what is necessary to provide full redress to the states. And that could have been done by an injunction that applies to individuals who are either born or reside. Mr. Purcell's point about social security numbers in other states, number one, that's speculative. The EO has never been implemented. We don't know whether the Social Security Administration will continue to issue social security numbers to these children. But even if it doesn't, if that child moves to the state of Washington and the state of Washington is protected by an injunction, the parents can request a social security number for that child. And because of the injunction, the federal government would be required to issue one. And most of the other injuries are cost-related, correct? And so they could be redressed after the fact? They can submit claims for the ordinary administrative processes. And if they're ultimately right about the merits of this, they could. So bottom line, the government's position that an injunction can provide the states complete relief without ordering a universal injunction? Absolutely. An injunction limited to the plaintiff's case. I did want to address the main theme on the other side, which is that our position is somehow foreclosed by the Supreme Court's decision in Wong Kim Ark. Not at all. Wong Kim Ark more nearly adopts our position than it does theirs. I would be perfectly happy if the court adopted as the rule of law the passage that I read on page 693 before about aliens who are domiciled here. Mr. Purcell quoted some parts of Wong Kim Ark that are part of that extended historical exposition. And there's something for everyone there. The court, for example, cited the New York decision from 1844 saying that domicile was not necessary. It also cited the New Jersey Supreme Court from 1895 saying that domicile was necessary. The court did not leave us in doubt about what it made of it all. It told us right at the top of page 693, here are our conclusions and everything on that page, including the sentence that Mr. Adams read, is all about domicile. So, counsel, I see a red light again, which means your time is officially up. However, again, we've asked questions of you. If you need another minute or two, I'll give it to you. But you have to bring your argument to a close. Thank you, Judge Gould. I will just make one final point. I believe our position here was characterized as radical. Our position here is very firmly grounded in text, history, and precedent. But I do want to be clear that the 14th Amendment Citizenship Clause sets a floor for birthright citizenship and not a ceiling. So, there's nothing in our position that would prevent Congress, if it saw fit, and on the terms it saw fit, from granting citizenship to the children of foreigners who are in the country temporarily or unlawfully. Plaintiff's position, by contrast- The way it did for Native Americans. That's exactly right. Plaintiff's position, by contrast, puts us in a constitutional bind. It compels us to grant citizenship to people who have no meaningful connection or allegiance to this country, like the children of birth tourists. And it forces our immigration law to be at war with itself, prohibiting illegal immigration with one hand while inducing and rewarding it with the other. The Constitution does not require those perverse results. Thank you. Thank you, counsel. This case shall now be submitted. But I want to thank counsel on both sides of this case for their excellent advocacy, and we appreciate it. You've given us a lot to think about, and the parties will hear from us in due course. All rise.
judges: HAWKINS, GOULD, BUMATAY